IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ERRIC ALSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | 08 C 5765 |
| a municipal corporation, | ) | |
| DEWAYNE DEVRIES, | ) | Hon. Judge Marvin E. Aspen |
| a Chicago Police Officer, | ) | |
| in his individual capacity, | ) | Hon. Mag. Judge Jeffrey Cole |
| KEVIN STOLL, | ) | |
| a Chicago Police Officer, | ) | |
| in his individual capacity, | ) | |
| DAVE PLEBANSKI, | ) | |
| a Chicago Police Officer, | ) | |
| in his individual capacity, | ) | |
| Star Number 11336, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

FIRST AMENDED COMPLAINT

Jurisdiction/Venue

1. This incident first occurred on or about October 9, 2006, in the City of Chicago, Cook County, Illinois, and continued thereafter.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983, § 1988, the judicial code 28 U.S.C. § 1331 and § 1343(a); the Constitution of the United States, and pendent jurisdiction, as provided under U.S.C. § 1367(a).

Parties

3. At all relevant times pertaining to this occurrence, the Plaintiff was a resident of Chicago, Cook County, Illinois.

1

4. At the time of the occurrence, Defendant City of Chicago was a municipal corporation, and the principal employer of Defendants Dewayne Devries, Kevin Stoll, and Dave Plebanski, who were each acting under color of law and in the course and scope of their employment with the City of Chicago.

Facts

5. On or about October 9, 2006, the Plaintiff, who was unarmed and did not pose any serious physical threat to the safety of any person, was approached by Officers Devries, Stoll and Plebanski on or near a public way in the 8100 block of South Colfax Avenue, in Chicago, Cook County, Illinois.

6. At that place and date, Officer Kevin Stoll fired a shot into the midsection of the Plaintiff, causing serious and permanent physical and emotional pain and suffering, and this shooting will cause the Plaintiff to lead a lifetime of pain, suffering, disability, and disfigurement.

7. In an effort to cover-up the unreasonable and legally unjustifiable actions of Officer Stoll, Officers Devries, Stoll, and Plebanski, collectively and individually, agreed to falsely arrest the Plaintiff for disarming a peace officer and aggravated assault of a peace officer, even though there was no probable cause for such an arrest, and they, collectively and individually, agreed to submit false police reports and to make false statements to superiors at the Chicago Police Department, to investigators with the office known then as the Office of Professional Standards (the agency charged with investigating police shootings), as well as to attorneys investigating the case at the Cook County State's Attorney's Office, all in an effort to cover-up the unjustifiable shooting of the Plaintiff.

8. The above-named Defendants falsely and maliciously indicated in these statements and reports that the Plaintiff physically struggled for the weapon of Officer Devries, at

2

the time a Chicago Police sergeant and the highest ranking supervisor on the scene, and that the Plaintiff grabbed Devries' weapon, even though all of the officers knew this to be false.

9. At the time of this incident, the City of Chicago adopted a manner of investigating police shootings that was so woefully inadequate that it led to the shooting of the Plaintiff, and the filing of false charges against the Plaintiff, as well as the malicious prosecution of the Plaintiff.

10. These policies and procedures include but are not limited to the following. The Defendant officers knew that their actions on the date of the incident – and their false account of the shooting – would not be seriously scrutinized by their superiors in the Chicago Police Department. Specifically, the City adopted procedures and policies whereby officers' accounts of the events leading up to a police shooting would not be subjected to any meaningful scrutiny by their superiors, and would be "cleared," or approved of, as a justifiable shooting without any scientific testing being conducted, and without any real testing of the officers' version of events, including the examination of bullet trajectory and witness testimony that contradicts officers' versions of events, such things that occurred in this case as well.

11. The above is what occurred in this case, as the officers' version of events did not make any common sense, and was flatly contradicted by the physical evidence, which was available for the City to use as tools to test the officers' version of events, but were either wilfully ignored by the City or never employed by the City. This wilful failure to investigate the officers' version of events, part of a widespread practice that occurs in virtually every shooting of a civilian by a Chicago Police Officer, encourages Chicago Police Officers to commit excessive force on citizens, and to have them falsely arrested to cover up the use of such illicit force. These policies and procedures were the "driving force" and proximate cause of the Plaintiff's injuries.

12. In fact, during the time period when the Plaintiff was fighting the charges against

him, Devries' weapon was swabbed for DNA, and only Devries' DNA was found on the gun and the holster, not the DNA of the Plaintiff. Furthermore, in the officers' initial version of events, the Plaintiff was allegedly struggling for the weapon while he was on his knees, and was shot in this position, which would have been easily rejected by basic bullet trajectory principles. This version of events changed thereafter, yet still did not comport with common-sense bullet trajectory principles.

13. Upon information and belief, the Defendants did not request that Devries' weapon be tested for fingerprints, which could have and should have been done, and by the time such a request was made by Plaintiff's defense attorney, the weapon had already been returned to Devries, and thus was unsuitable for fingerprint analysis.

14. In a further effort to cover-up Stoll's shooting, Devries produced before trial his holster, which he admits was never inventoried into evidence or photographed on the night of the incident, and, years later, for the first time when the case was originally set for trial, Devries claimed this holster was ripped during a struggle for the officer's weapon, an allegation that all three Defendants knew was false.

15. Nevertheless, this false torn-holster story was told to assistant state's attorneys investigating and trying the criminal case against the Plaintiff, and was part of the numerous perjuriious statements made by the Defendants at the Plaintiff's criminal trial.

16. The Plaintiff was in continuous custody from October 9, 2006 up to December of 2008, unable to make the necessary bail to be released from prison on the felony charges placed against him as a result of the false accusations made by Defendants Devries, Stoll, and Plebanski.

17. During the time the Plaintiff was in jail, he was forced to endure multiple surgeries, suffered a tremendous amount of pain and suffering, including having to wear for a period of time

a colostomy bag. In addition to the above, the Plaintiff's child was born while the Plaintiff was in custody, all of which caused the Plaintiff serious and permanent physical, emotional and mental pain and suffering.

18. The Plaintiff was unable to make bond for the case, despite motions to reduce bond being filed, until after the case was originally tried, and which resulted in a hung jury. After that mistrial (wherein the judge heard all of the evidence in the case), the judge reduced the Plaintiff's bond to $25,000(D), 10 percent of which the Plaintiff was able to post, resulting in his release on bond.

19. Thereafter, the criminal case was continued from time to time until it was again set for jury trial on September 21, 2009.

20. After a four day jury trial, on September 24, 2009, the jury found the Plaintiff not guilty on both serious felony charges (disarming a peace officer and aggravated assault of a peace officer), resulting in the Plaintiff's discharge, thus terminating the criminal charges in the Plaintiff's favor in a manner consistent with the innocence of the Plaintiff.

21. As a result of the unjustifiable shooting, as well as the unjustified detention and prosecution of the Plaintiff, the Plaintiff has suffered serious past and permanent physical and mental injury, a loss of freedom, and other pecuniary damages (including but not limited to hundreds of thousands of dollars in medical bills).

COUNT I – Section 1983 – Excessive Force – Plaintiff against Defendant Kevin Stoll

22. The Plaintiff realleges what has previously been alleged in this Complaint.

23. In taking the actions described above, Defendant Stoll wilfully, wantonly and unreasonably used excessive force on the Plaintiff, the proximate cause of which was the Plaintiff's damages, described more fully above.

WHEREFORE, the Plaintiff demands compensatory damages against Defendant Stoll, plus punitive damages, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

COUNT II – Section 1983 – False Arrest – Plaintiff against Defendants Devries, Stoll, and Plebanski

24. The Plaintiff realleges what has previously been alleged in this Complaint.

25. In taking the actions described above, Defendants Devries, Stoll and Plebanski wilfully and wantonly falsely arrested the Plaintiff without probable cause or other legal justification, the proximate cause of which was the Plaintiff's damages, described more fully above.

WHEREFORE, the Plaintiff demands compensatory damages against Defendants Devries, Stoll, and Plebanski, plus punitive damages, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

COUNT III – Section 1983 – Failure to Intervene to Prevent Excessive Force – Plaintiff against Defendants Devries, and Plebanski

26. The Plaintiff realleges what has previously been alleged in this Complaint.

27. In taking the actions described above, Defendants Devries and Plebanski had a reasonable opportunity to prevent Stoll's use of excessive force, but they intentionally failed to do so, the result of which was the Plaintiff's damages, described more fully above.

WHEREFORE, the Plaintiff demands compensatory damages against Defendant Devries and Plebanski, plus punitive damages, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

COUNT IV – Section 1983 – Supervisory Liability –   Plaintiff against Defendant Devries

28. The Plaintiff realleges what has previously been alleged in this Complaint.

29. In taking the actions described above, Defendant Devries was a direct participant in the actions described above, and Devries, the highest ranking supervisor on the scene, was deliberately indifferent to the Constitutional rights of the Plaintiff in that he condoned, encouraged, and/or turned a blind eye to the actions of the other named Defendant Officers when these officers violated the Plaintiffs' Constitutional rights, as described more fully above, the result of which was the Plaintiff's damages, described more fully above.

WHEREFORE, the Plaintiff demands compensatory damages against Defendant Devries, plus punitive damages, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

## COUNT V – Section 1983 – *Monell* Claim – Plaintiff against Defendant City of Chicago

30. The Plaintiff realleges what has previously been alleged in the Complaint.

31. The City of Chicago had one or more policies and procedures in place at the time of this incident that were the "driving force" and the proximate cause of the Constitutional violations of the Plaintiff, described earlier in this Complaint.

32. At the time of this occurrence, the City had one or more policies and procedures in place that, *inter alia*, encouraged and/or condoned unjustifiable shootings of unarmed citizens, and the false arrest and malicious prosecution of these same citizens, such as the Plaintiff.

33. At the time of this occurrence, the City had one or more policies or procedures in place whereby its officers, including the named Defendants, improperly trained its officers in how to employ weapons involving citizen encounters.

34. Additionally and/or alternatively, at the time of this occurrence, the City had one or more policies or procedures in place whereby its officers, including the named Defendants, were

improperly disciplined and/or supervised for their failure to following any such training in how to employ weapons involving citizen encounters.

35. The proximate cause of these policies and/or procedures was the Plaintiff's injuries, described more fully above.

WHEREFORE, the Plaintiff demands compensatory damages against the City of Chicago, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

COUNT VI – Illinois Malicious Prosecution Claim – Plaintiff against Defendants Devries, Stoll, and Plebanski

36. The Plaintiff realleges what has previously been alleged in this Complaint.

37. In taking the actions described above, Defendants Devries, Stoll, and Plebanski wilfully and wantonly, without probable cause or other legal justification, maliciously prosecuted the Plaintiff, the proximate cause of which was the Plaintiff's damages, described more fully above.

38. Devries, Stoll, and Plebanski did so with malice, they each played a substantial role in the prosecution, with Devries being the complaining witness as to all of the criminal charges, and the case was terminated in the Plaintiff's favor in a manner consistent with the innocence of the Plaintiff.

WHEREFORE, the Plaintiff demands compensatory damages against Defendants Devries, Stoll, and Plebanski, plus punitive damages, plus the costs of this action, and any such other and additional relief as this Court deems equitable and just.

COUNT VII – Plaintiff against the City of Chicago (Indemnification)

39. The Plaintiff realleges what has been previously alleged in this Complaint.

40.     Defendant City of Chicago is the indemnifying entity for the actions, described above, of Defendant Devries, Stoll and Plebanski, who took their actions while acting under color of law and in the course and scope of their employment with the City of Chicago.

WHEREFORE, should Defendants Devries, Stoll and/or Plebanski be found liable on one or more of the claims set forth above, the Plaintiff demands that Defendant City of Chicago be found liable for any judgment (other than punitive damages) he obtains thereon.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

                            Respectfully submitted,

                            By s/Richard Dvorak
                            _____
                            Richard Dvorak,
                            One of the Attorneys for the Plaintiff.

Richard Dvorak
DVORAK, TOPPEL & BARRIDO, LLC
200 S. Michigan Avenue, St. 1240
Chicago, IL 60604
(312) 663-9500 (phone)
(312) 663-9800 (fax)